Donald M. WOLLAM, Appellant,

v.

UNITED STATES of America, Appellee.

No. 14744.

United States Court of Appeals
Ninth Circuit.

May 2, 1957.

Gladstein, Andersen, Leonard & Sibbett, Norman Leonard, San Francisco, Cal., Donald M. Wollam, Portland, Or., in pro. per., for appellant.

C. E. Luckey, U. S. Atty., Robert R. Carney, Asst. U. S. Atty., Portland, Or., for appellee.

Before FEE, CHAMBERS and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge.

This case is a companion of Simpson v. United States, 9 Cir., 241 F.2d 222.

Here Donald M. Wollam was a witness before the same Congressional subcommittee (before which Simpson appeared) conducting an investigation on June 19, 1954, and he refused to answer the following questions:

1. Mr. Wollam, what is your present address, sir?

2. Now, Mr. Wollam, what is your present employment?

3. Did you ever attend elementary school; and if so, where?

4. Did you ever attend high school, Mr. Wollam?

5. Now, did you ever attend college, Mr. Wollam?

Various grounds were variously stated by Wollam for the refusal to answer which he made. None was later relied on except the claim that an answer might tend to incriminate. It is asserted that he was protected by the Fifth Amendment of the Constitution, the safety of which he claimed.

Indictment with a count for each refusal followed on December 1, 1954. Trial by jury and conviction on each count followed on January 19, 1955. Identical concurrent prison sentences were imposed on each count. In addi-

tion, there was a fine of $250 levied on the first count.

As we said in Simpson, if the conviction is valid on the first count, we need not examine the other four counts. In our opinion, the judgment is correct on the first count.

The approach of the appeals in Wollam and MacKenzie varies in some detail from that presented in Simpson; thus, this second opinion.

 Appellants contend that the indictment did not plead or prove the pertinency of the questions. Where the question (Mr. Wollam, what is your present address, sir?) is obviously simply one of identification of the witness the pertinency is not obscure. If the witness had been asked if he was familiar with some dolphin in the Willamette River, then an explanation of its pertinency might be required in the indictment. Details of the dolphin's relevance should follow in the proof.

 It is argued that it is not evident from any testimony what relevance defendant's address had to the purpose of the investigation. Testimony of any kind must be laid stone on stone. The first relevant point is: Who is the witness, anyway? Certainly the test of pertinency is not whether the question itself was in the ultimate area of investigation: Communist activities in the Pacific Northwest states. It is pertinent if the question is a usual and necessary stone in the arch of a bridge over which an investigation must go.

We next come to the problem of whether defendant was insulated by the Fifth Amendment from answering: "Mr. Wollam, what is your present address, sir?"

 .In Simpson we said that at the committee interrogation, or at least no later than his trial, the witness or his counsel must demonstrate how the question might be dangerous for him to answer; i. e., lead to a disclosure which he had a right to protect against. Here on appeal counsel import by their own leave a committee hearing report containing the testimony of earlier witnesses who testified of Communist underground activities. These witnesses had testified that underground Communist members conceal their addresses, ages, jobs. Also, it was related that homes were used by Communists in the underground as "mail drops." It is well settled since Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692, that the trial judge decides and tells the jury whether the defendant had a right to claim the privilege which he, the defendant, asserted. This background of testimony prior to Wollam's appearance was never presented to the trial court by the defendant, although he, Wollam, had abundant opportunity to do so. Strange indeed would it be if we were to receive the evidence offered for the first time here and find it justified the defendant's refusal to answer. This court reviews the trial court's record. Able counsel for the defendant know this. We, therefore, do not consider this collateral record tendered us, other than to decide we should not consider it.[1]

 Under the historical development of the privilege against self incrimination, it is only in direct defense of a crime that a defendant does not have to be sworn (or affirm) and take the stand.[2] If within the territorial limits of jurisdiction, a witness must respond to a subpoena and take the stand for

1. Counsel justify the supplemental "beefing up" of the record here by the fact that a supplemental record was effectively used in Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. That was a grand jury contempt matter which was judge-tried. There the Supreme Court held a certain affidavit filed in district court was before the court and should have been considered by it and by the court of appeals. And, some of the facts in the affidavit appear to have been within the district judge's experience in the particular case. The supplemental matter in this case has been denied our district judge.

2. 8 Wigmore on Evidence, 3rd Ed., § 2268, p. 388, et seq.

grand jury and congressional investigations. We assume that he must state his name. Ordinarily we would think that he should identify himself sufficiently to distinguish himself from all the other David Wollams.

Some accommodation must be made to the subpoena power. Suppose five David Wollams were subpoenaed. Suppose each refused to state where he lived on the ground it might tend to incriminate. We don't think a committee ordinarily has to stand for that.

■ We do not hold that there can never be a case where a witness cannot refuse to state his residence. We do think that a factor to be considered in determining privilege is that it is a rare, rare case where disclosure of address would lead to incrimination. If the case on trial is such a case where address might tend to lead to incrimination, it ought to be pointed out how somewhere before the case goes to the jury, or the possibility should appear to the trial court in the record it had. It was absent here.

■■ Defendant complains that the indictment failed to allege that the refusal was willful. The charging part of the indictment was identical with Simpson's. What we said there on this point, we adhere to now. We are satisfied that the question of defendant's intentional refusal to answer was properly submitted to the jury. Also, the instructions are amply adequate.

■ It is claimed that under Quinn v. United States, 349 U.S. 155, 75 S.Ct. 668, 99 L.Ed. 964, and Emspak v. United States, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997, and Fagerhaugh v. United States, 9 Cir., 232 F.2d 803, the committee chairman did not properly instruct the defendant to answer. These cases do not stand for the proposition that the last words on the subject of any question must be a demand that the witness answer. In our judgment adequate demand to answer was made. This really must be tested by a fair reading of the record. Therefore, we add as an appendix the record as the trial court had it on what transpired at the congressional hearing with reference to Donald Wollam.[3] This appendix is also useful in examining the setting of the questions which Wollam refused to answer, as the trial court had the setting of the questions for study and examination.

We do not rest our decision on the next point. We do not say that if a witness amplifies his claims with an untenable reason for not testifying then he cannot later fall back on an evident good reason for not testifying, which reason was susceptible of observation by the trial court.

■ The truth of the matter of refusal may rest in Wollam's statement before the committee that:

1. He was afraid of reprisals to his family.

2. He was not going to join "the stable of stool pigeons."

3. He was afraid if he started answering questions he might go too far and answer one too many questions; thus, waive his rights.

While, as above stated, we do not rely on the three specific reasons he gave, yet his statements certainly do not strengthen his case.

Of course, Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118, is our guide. We do not believe the conviction here is proscribed by the standards set forth there.

In our examination of all of the cases in recent years where Fifth Amendment contempt convictions have been reversed by the Supreme Court, it is our belief that the possibility of the particular answers to questions supplying

---

3. On the question of the first count, "Mr. Wollam, what is your present address, sir?", Chairman Velde said, "Yes. You are certainly directed to answer that question." Then subsequently he twice asked if Wollam refused to answer. Added to the demand, the questions rather strengthen than weaken the government's position.

some link in a chain was real. See the cases cited in Circuit Judge Hastie's review of the subject in United States, v. Coffey, 3 Cir., 198 F.2d 438. Here we think it was imaginary and perhaps even an afterthought. The refusals are probably accounted for by just the reasons Wollam gave.

Judgment affirmed.

### APPENDIX

Testimony of Donald M. Wollam, Accompanied by His Attorney, Irvin Goodman

Mr. Wollam. My name is Donald M. Wollam. W-o-l-l-a-m.

Mr. Kunzig. Would counsel please state his name and office address for the record?

Mr. Goodman. My name is Irvin Goodman, Portland Trust Building, city.

Mr. Kunzig. Thank you, Mr. Goodman. Mr. Wollam, what is your present address, sir?

Mr. Wollam. Mr. Kunzig, I refuse to answer that question on the first, under the fourth amendment because I believe that counsel is aware that people who have given their address over this microphone both here and in Seattle have had their homes threatened. I have a wife and family at home who I don't propose to put in jeopardy because of any action I may take here.

Mr. Kunzig. Just shorten it up.

Mr. Velde. You may state your legal grounds.

Mr. Wollam. I don't like your question, Mr. Kunzig, and I will certainly not surrender to you any right that I may have to—

Mr. Velde. You may state your legal grounds, young man, but we're not going to listen to another tirade. Do you have contempt in your heart, when you approach the witness stand, do you have contempt in your heart for this committee of your United States Congress?

Mr. Wollam. I refuse to answer that question on the grounds of the fifth amendment, the decision of United States

judge, James Alger Fee, in the case of United States versus—

Mr. Velde. It is apparent that this witness is trying to filibuster. We just can't have that, as I pointed out the other day.

Mr. Kunzig. Mr. Chairman, I respectfully request, in order that the record may be clear and that the witness be warned that there is possible contempt here that he be directed to answer the question as to, that I have just asked, as to his address.

Mr. Velde. Yes. You are certainly directed to answer that question.

Mr. Wollam. Mr. Chairman, I ask to continue my reasons for not answering that question.

Mr. Velde. You have already stated sufficiently the grounds. Now do you refuse to answer?

Mr. Wollam. I have only stated the fourth amendment.

Mr. Velde. Do you refuse to answer upon direction the question as to your address?

Mr. Wollam. I do refuse to answer that question. First on the grounds that I have just stated under the fourth amendment to the Constitution. Secondly I refuse to answer again on the grounds that I have just stated regarding the Alger Fee decision. I refuse to further answer that question under the 1st, the 5th, the 9th, and the 14th amendments to the Constitution of the United States and any other sections of the Constitution that may apply, and also the constitution of the State of Oregon. Now this may be funny to you, Mr. Kunzig.

Mr. Kunzig. It is not funny.

Mr. Velde. It is very, very serious.

Mr. Kunzig. It is very, very serious.

Mr. Velde. You are the one who is taking this as being funny.

Mr. Wollam. I certainly have no intentions—

Mr. Velde. Proceed to ask the questions, Mr. Counsel.

Mr. Kunzig. You will understand now, Mr. Wollam, so that your filibustering may be cut off, we will understand and make sure that your rights are protected. Any time that you refuse to answer we will understand that it is on the grounds of the fifth amendment.

Now, Mr. Wollam, what is your present employment? I am asking that question very seriously.

Mr. Wollam. And I will give you a very serious answer.

Mr. Kunzig. Thank you.

Mr. Wollam. Mr. Kunzig, I refuse to answer it not just on the fifth amendment, as you stated that you would understand my refusals would be based upon, but upon all of the grounds that I have previously stated.

Mr. Kunzig. All right. Mr. Chairman, may I ask you to please direct the witness to answer the question as to where he is presently employed.

Mr. Velde. Yes; you are directed to answer the question as to your employment at the present time.

Mr. Wollam. I refuse to answer the question upon the grounds of the first and fifth amendment to the Constitution of the United States pursuant to article 1, section 10, Constitution of Oregon, which provides in part; that every man shall have—

Mr. Velde. Isn't your refusal—

Mr. Wollam (continuing). Remedy by due course of law for injury done him—

Mr. Velde. Will the witness listen to me for just a minute? Is your refusal to answer based upon the same reasons that you gave before? Is that right?

Mr. Wollam. My refusal to answer is based upon the reason that I just gave plus all else that I have pled here, and I beg leave, Mr. Chairman, I beg leave—

Mr. Velde. All right, proceed, Mr. Counsel.

Mr. Kunzig. Now Mr. Wollam, the next question is as follows: Did you ever attend elementary school and if so where?

(Witness confers with counsel.)

Mr. Wollam. Mr. Chairman, in the dissenting opinions of Justices Douglas, Black, and Frankfurter the line of demarcation—

Mr. Velde. Young man, we are not going to listen to a long diatribe or a lot of advice on what the law is, as far as the Supreme Court decisions are concerned. Either answer the questions or refuse to answer. I will say that if you will answer the questions as put to you by our counsel, then you might have the opportunity to go ahead and explain the law or anything that you want to, but you must first of all give us the courtesy of giving us an answer. By that I mean an answer of yes or no.

Mr. Wollam. I have refused to answer the question Mr. Chairman and I ask you for the courtesy of being permitted to state my reasons.

Mr. Velde. You have stated the reasons.

Mr. Wollam. I think these reasons are quite important. They are very important to me.

Mr. Velde. Will you proceed, Mr. Counsel?

Mr. Kunzig. Mr. Chairman, I think that we also ought to note that he was citing the dissenting opinion. This committee usually tries to follow the majority opinion of the Supreme Court.

Now on the last question you have refused. Now let me ask you this. Mr. Chairman, I have forgotten the record. Have you directed him to answer the question as to whether he went to the elementary school or not?

Mr. Velde. No.

Mr. Kunzig. Would you please direct him?

Mr. Velde. You are directed to answer the question as to where you attended elementary school, or whether you attended elementary school.

Mr. Kunzig. The question was where you attended and where was the exact way that I put it.

Mr. Wollam. Mr. Chairman, in view of the fact that I have no way of knowing as what time when I answer a question I will be waiving my rights to refuse to answer further questions that I know will follow from this committee, and since I have no intention of becoming a member of your stable of stool pigeons I am going to stand upon my constitutional rights and decline to answer the question upon the grounds of the first and fifth amendments and—

Mr. Velde. Now we are not going to listen to any more of this diatribe such as calling us a stable of stool pigeons. I am sure that your mother wouldn't appreciate your saying something like that and I am sure that the rest of the decent people in this area don't appreciate your making such wild and absurd and ridiculous statements, and so we are not going to listen to anything further.

Counsel, do you have any other important questions that you want to ask this witness?

Mr. Kunzig. Just a few more, Mr. Chairman. I want this witness to have a full opportunity to answer these questions.

Did you ever attend high school, Mr. Wollam.

(Witness confers with counsel.)

Mr. Wollam. As an overseas war veteran, Mr. Chairman; 11 months in German prison camp, I stand upon the Constitution of the United States, the same provisions that I cited earlier.

Mr. Kunzig. Now did you ever attend college, Mr. Wollam? Mr. Chairman, will you please direct the witness to answer that question?

Mr. Velde. Yes, you are directed to answer the question as to your—was it high school? Was that the last question?

Mr. Kunzig. Yes, high school. The question exactly as it appears in the record.

Mr. Wollam. And I will again decline to answer and on the same grounds that I gave before. And I might add,

Mr. Chairman, that if you are interested—

Mr. Kunzig. Did you ever attend college?

Mr. Wollam. The same answer and the same reason.

Mr. Kunzig. I respectfully request that the witness be directed, Mr. Chairman, to answer the question.

Mr. Velde. Yes, you are directed to answer.

Mr. Wollam. I refuse to answer, Mr. Chairman, same reason.

Mr. Kunzig. Now you said that you were an overseas veteran and you were in the Armed Forces of the United States. Were you in the Army, or the Navy, or the Marines, or what?

Mr. Wollam. I was in the Army.

Mr. Kunzig. And what was the highest rank or grade that you achieved?

Mr. Wollam. Private, first class.

Mr. Kunzig. Private, first class. Now were you a member of the Communist Party when you were a private, first class, in the United States Army?

(Witness confers with counsel.)

Mr. Wollam. Will you repeat that question please?

Mr. Kunzig. Would the reporter please repeat it?

(The record was read by the reporter as follows:)

Now were you a member of the Communist Party when you were a private, first class, in the United States Army?

Mr. Wollam. I refuse to answer that question on the grounds of the fifth amendment and the decision of the United States Judge James Alger Fee in the case of the United States v. Johnson (76 F.Supp. 538, at pages 540, 541). I also invoke the first, fourth, ninth—

Mr. Kunzig. We understand that you invoke those.

Mr. Wollam (continuing). 10, 14th, the whole works.

Mr. Kunzig. That is perfectly clear to us now and you know that it is per-

fectly clear and there is no necessity to say anything more.

Now have you ever been a member of the Communist Party?

Mr. Wollam. I will answer all such inquiries as to my association with people, as to my religious or my political beliefs, or affiliations and so forth with these refusals and with these reasons. I don't feel that you have any right, and I again cite the decision of Judge James Alger Fee.

Mr. Kunzig. We understand that citation now. Now let me ask you, are you now a member of the Communist Party?

Mr. Velde. Let the record show that counsel is pointing to what is apparently a prepared answer to that question and directing the witness to answer the questions according to certain printed material which he is holding before him.

(Witness confers with counsel.)

Mr. Wollam. I understand that I am allowed counsel even though counsel isn't permitted to address the committee. I can see no harm in his being of what small help you permit counsel to be at one of these hearings.

I am going to refuse to answer that last question on the grounds that I just gave based on the grounds of the fifth amendment and the decision of Judge James Alger Fee in the case of United States v. Johnson, (76 F.Supp. pp. 538, 540, 541).

Mr. Kunzig. All right, I understand.

Mr. Wollam. Also, all the other—

Mr. Kunzig. Now we will go right on and let me ask you if it isn't true, and I repeat what you said a little earlier that we don't consider this to be funny at all, isn't it true that you are today—this very minute as you are sitting here in this courtroom of the United States courthouse before the Con-

gress of the United States of America —a section organizer of District 11 Committee of the State of Oregon Communist Party right now in 1954? Isn't that correct?

Mr. Wollam. I refuse to answer that question on all the grounds I just gave, Mr. Chairman.

Mr. Kunzig. Mr. Wollam, have you ever been engaged in any espionage activities against the United States?

(Witness confers with counsel.)

Mr. Wollam. I consider that to be a trap question, Mr. Kunzig, and I will give you the same answer that I have given you on all of the other questions that are in that line.

Mr. Kunzig. Now just let me refute something that you said a few moments earlier. This does not involve associations, personnel, friends, religious beliefs, any of those things that you have been talking about. This involves loyalty to the United States of America and your behavior with regard to espionage. Have you ever been involved in any espionage activities? I ask you once again.

Mr. Wollam. Same question, same answer.

Mr. Kunzig. I think it is perfectly obvious the position of this witness, Mr. Chairman. No further questions.

Mr. Velde. Mr. Frazier?

Mr. Frazier. No questions.

Mr. Velde. I must say that by your conduct here you have certainly destroyed my faith in you as a witness and you as an American citizen in refusing to give up any information whatsoever which might help us. With that you are excused from the witness stand and discharged from your subpoena.

Mr. Wollam. Could I have an opportunity to answer your last statement, Mr. Chairman?

Mr. Velde. No; you are dismissed.