Joanne SHANE, Appellant,

v.

UNITED STATES of America,
Appellee.

Sally Ann HITSON, Shirley Joyce Mc-
Gowan and Betty Lou Hammett,
Appellants,

v.

UNITED STATES of America,
Appellee.

Nos. 16759, 16695.

United States Court of Appeals
Ninth Circuit.

Aug. 26, 1960.

Rehearing Denied Oct. 31, 1960.

Wm. H. Lally, Sacramento, Cal., for
appellants Shane and McGowan.

Wm. H. Lally and Robert A. Zarick,
Sacramento, Cal., for appellant Hammett.

Milton L. Baldwin, Harry J. Engle-
bright, Sacramento, Cal., for appellants
Hitson et al.

Laurence E. Dayton, U. S. Atty., San
Francisco, Cal., Robert E. Woodward,
Asst. U. S. Atty., Sacramento, Cal., for
appellee.

Before CHAMBERS, BONE and
JERTBERG, Circuit Judges.

CHAMBERS, Circuit Judge.

Shane, Hitson, McGowan and Hammett
are recalcitrant witnesses before the
grand jury in Sacramento in the North-
ern Division of the Northern District of
California. Interstate transportation of
women for commercial purposes is there
under investigation. Apparently the ac-
tivities of men preying upon women
(financially) was the subject of a probe
to make a case or cases under the Mann
Act, 18 U.S.C. § 2421. Obviously the
four appellants are suspected of being
the stock in trade of the men. It is be-
lieved they are not short on knowledge.
All four have been adjudged guilty of
criminal contempt. There is also an as-
pect of civil contempt which we find un-
necessary to consider.

The four women sought refuge in the
Fifth Amendment and declined to answer
many questions. They claim their testi-
mony might tend to incriminate them as
participants in a federal criminal con-
spiracy or in federal penal provisions of
the income tax law.

The government says the four are beyond the pale of Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L. Ed. 1118. They say they are within it. Were we only concerned with Hoffman, the government might have an arguable position. But in our judgment its position is swept away by Simpson et al. v. United States, 355 U.S. 7, 78 S.Ct. 14, 2 L.Ed.2d 22. That decision, in its totality, reads as follows:

> "Per Curiam. The petition for writ of certiorari is granted. Upon consideration of the entire record and the confession of error by the Solicitor General, the judgments of the United States Court of Appeals for the Ninth Circuit are reversed. Hoffman v. United States, 341 U.S. 479 [71 S.Ct. 814, 95 L.Ed. 1118]."

The cases so reversed are reported as Simpson v. United States, 9 Cir., 241 F.2d 222; Wollam v. United States, 9 Cir., 244 F.2d 212; and MacKenzie v. United States, 9 Cir., 244 F.2d 712.

Whether one may think the possibility of incrimination had any real practical significance here, it is easy to compare the facts with those in Simpson, Wollam, and MacKenzie. When one makes that comparison one finds the facts here safely within the privilege.

We would not joust with the solicitor general for following the dictates of his conscience and for correctly anticipating the Supreme Court's view, but in the frame the reversal of the three cases is found they too easily can escape detection in ordinary fast research. It is obvious that more than one trial court and one district attorney have not been advised directly of these three cases and the department's own views.

The judgments are severally reversed.

### On Petition for Rehearing

The government contends we misinterpret the effect of Simpson et al. v. United States, 355 U.S. 7, 78 S.Ct. 14, 2 L.Ed.2d 22, reversing Simpson v. United States, 9 Cir., 241 F.2d 222; Wollam v. United States, 9 Cir., 244 F.2d 212; and MacKenzie v. United States, 9 Cir., 244 F.2d 712.

The United States attorney quotes in part from the solicitor general's confession of error in Simpson as follows:

> " * * * Disclosure of one's residence might prove incriminating if Party meetings were, as here, alleged to have been held there. Answers to questions relating to educational background and military service might also serve to identify the witness as the person who had been accused by other witnesses of having engaged in Party activities at certain times and places, such as at Reed College. Even the question as to age (count 4 of the MacKenzie indictment), if answered, might have identified the witness as the person who, while attending Reed College (see count 3 of the MacKenzie indictment), engaged in Communist Party activities."

However, this court mistakenly had the notion that the Fifth Amendment did not protect an individual from identifying himself and going so far, on identification, as to separate himself from all of the other MacKenzies, Simpsons and Wollams. A man when presented to the Commissioner or arraigned in court is required to state his true name. When he is on trial and witnesses are asked to identify him, he cannot sit with a hood over his face. We assume one who is arrested must submit to fingerprinting. We assume that within reasonable limits a prisoner while in jail must submit to an optical inspection by prospective witnesses. And all of these things may be the closing link that convicts the man. But our analogies are not correct.

The Wollam, MacKenzie and Simpson cases were basically affirmed here on the count charging refusal to state one's residence, there being concurrent sentences on the other counts. We did not reach the question about MacKenzie attending Reed College to which the solicitor general refers in his confession.

It is just a question of judgment. How, when refusal to state one's residence is privileged under the Fifth Amendment, we can hold the questions here in Shane, Hitson, McGowan and Hammett innocuous and unprotected, we do not know.

As typical of all four, we detail the questions asked of the witness Shane of which she was found guilty of contempt in refusing to answer before the grand jury:

1. How long have you lived in Vallejo?

2. Where do you work?

3. What is your occupation?

4. Have you ever been engaged in prostitution?

5. Has anyone ever assisted you in finding a place to work as a prostitute?

6. Were you in Elko, Nevada, on or about February 21, 1959?

7. From where did you travel when you went to Elko, Nevada, on or about February 21, 1959?

8. How did you get there?

9. With whom did you go?

10. Who, if any one, provided your transportation to Elko?

11. Who, if any one, assisted you in getting to Elko?

12. Why did you go to Elko, Nevada?

13. Who suggested you go to Elko?

14. When did you leave Elko, Nevada?

15. Where did you go from Elko, Nevada?

16. Who, if any one, assisted you in traveling from Elko?

17. Who, if any one, provided your transportation from Elko?

18. How were you assisted?

19. Who suggested that you leave Elko?

20. Have you ever been in Winnemucca, Nevada?

21. When was the last time?

22. Were you in Winnemucca, Nevada, in February, March, April or May of 1959?

23. Who, if any one, provided your transportation to Winnemucca?

24. Who, if any one, assisted you in traveling to Winnemucca?

25. How did you go to Winnemucca?

26. Who suggested that you go to Winnemucca?

We do not analyze the questions in the light of Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118. But we must do so in the light of Simpson, supra.

It is not fanciful that the questions asked these women might lead to federal criminal income tax problems for them, or to a showing that one of the women had been a party to the transportation of some other woman (or a conspiracy) in interstate commerce in violation of the Mann Act, 18 U.S.C.A. § 2421 et seq.

This opinion is not intended to be critical of the ultimate decision in Simpson in which the solicitor general concurred. But we think it has far-reaching consequences which must be applied here. If we misunderstand it, we shall be corrected in time. Meanwhile, the United States attorney should not be impatient that he did not receive a full dress opinion in these cases after they were originally submitted. We saw no need for it, and still see none.

The petition for rehearing is denied.