[No. H007685. Sixth Dist. Sept. 17, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS JOSEPH SULLIVAN, Defendant and Appellant.

**COUNSEL**

Roberts & Elliott, James K. Roberts and Kirk W. Elliott for Defendant and Appellant.

George W. Kennedy, District Attorney Thomas F. Thurlow and Thang Nguyen Barrett, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

AGLIANO, P. J.—Defendant, who was charged with driving under the influence of alcohol (Veh. Code, § 23152), moved under Penal Code section 1538.5 to suppress evidence of his intoxication obtained after a police officer stopped his car for speeding. He contended that evidence of his speeding was derived from an illegal speed trap and was therefore inadmissible to establish probable cause for the stop. The municipal court denied the motion. Defendant appealed to the superior court appellate department, which reversed. Upon the People's application, the superior court certified the case for transfer to this court. We ordered transfer.

We hold that Vehicle Code section 40803, subdivision (a), rendering evidence derived from a speed trap inadmissable, was abrogated by the

Proposition 8 "Right to Truth-in-Evidence" provision contained in article I, section 28, subdivision (d), of the California Constitution. Accordingly, we affirm the municipal court's order denying defendant's motion to suppress evidence.

## The Speed Trap Statutes

California first enacted laws prohibiting speed traps and providing remedies for their use in 1923. (Stats. 1923, ch. 266.) Upholding the constitutionality of the speed trap laws two years later, the Supreme Court observed in *Fleming* v. *Superior Court* (1925) 196 Cal. 344, 349 [238 P. 88], that the Legislature " 'clearly expressed its conviction that the presence of traffic officers actually patrolling the highways dressed in distinctive uniforms and in plain sight of all travelers on the highways would have a most salutary effect in securing the observance of each and all of the regulations imposed upon drivers of vehicles upon the public highways.' " (Accord *People* v. *Halopoff* (1976) 60 Cal.App.3d Supp. 1, 5 [131 Cal.Rptr. 531]; *People* v. *Johnson* (1972) 29 Cal.App.3d Supp. 1, 4-5 [105 Cal.Rptr. 212].) Commentators have suggested that the Legislature was also motivated by a desire to eliminate clandestine methods of traffic enforcement designed to augment local revenues through exorbitant fines. (Murphy, *Speed Traps and the Use of Airplanes* (1963) 14 Hastings L.J. 427, 427-428; accord Notes, *Criminal Law: Admissibility of Evidence Obtained by Radar Speed Meter* (1955) 43 Cal.L.Rev. 710, 711; see *People* v. *Beamer* (1955) 130 Cal.App.2d Supp. 874, 878-879 [279 P.2d 205] (dis. opn. of Wagler, P. J.).)

Although the speed trap laws have undergone numerous amendments since 1923, they have always been carried forward in successive versions of the Vehicle Code. (*People* v. *Halopoff, supra,* 60 Cal.App.3d Supp. 1, 5.) Today, the speed trap laws appear as Vehicle Code sections 40800-40805 in chapter 3 ("Illegal Evidence"), division 17 ("Offenses and Prosecution").[1]

Section 40801 sets forth the general prohibition against speed traps: "No peace officer or other person shall use a speed trap in arresting, or participating or assisting in the arrest of, any person for any alleged violation of this code nor shall any speed trap be used in securing evidence as to the speed of any vehicle for the purpose of an arrest or prosecution under this code."

---

[1] Unless otherwise indicated, further statutory references are to the California Vehicle Code.

The current speed trap laws still reflect the Legislature's original intention to promote conspicuous traffic enforcement. For example, section 40800 generally requires that every traffic officer on duty to enforce divisions 10 ("Accidents and Accident Reports") and 11 ("Rules of the Road") wear a "full, distinctive uniform . . ." and that his or her vehicle, if any, "be painted a distinctive color . . . ."

Section 40802 defines a "speed trap" as either the determination of a vehicle's speed by timing the vehicle's travel over a premeasured section of highway (§ 40802, subd. (a)) or the use of radar to enforce a prima facie speed limit when the speed limit is not justified by a traffic and engineering survey conducted within the preceding five years (§ 40802, subd. (b)). Although the definition of a "speed trap" was initially limited to that set forth in subdivision (a), the Legislature added subdivision (b) in 1972, resolving an ongoing debate whether the original definition necessarily included the use of radar. (See *In re Beamer* (1955) 133 Cal.App.2d 63 [283 P.2d 356]; Notes, *Criminal Law: Admissibility of Evidence Obtained, supra,* 43 Cal.L.Rev. 710, 712 et seq.) Thus, radar is permitted if a traffic and engineering study justifying the prima facie speed limit has been conducted within the preceding five years.

The provisions of section 40802, defining a speed trap, do not apply to "local streets and roads," as defined by the statute. The exemption for local streets and roads is subject to a sunset provision, however. The Legislature unanimously amended section 40802 in 1986 to extend the sunset provision from 1987 to 1993. (Stats. 1986, ch. 833, § 1.)

Section 40803, subdivision (b), provides that in the prosecution of a charge involving the speed of a vehicle, where enforcement is through use of radar or other electronic device, the People must establish, as part of their prima facie case, that the evidence is not based upon a speed trap. Such a prima facie showing may be made via evidence that a traffic and engineering study has been conducted within the past five years or that the offense occurred on a local street or road.

The remaining statutory provisions establish remedies for the use of a speed trap. Section 40803, subdivision (a), provides: "No evidence as to the speed of a vehicle upon a highway shall be admitted in any court upon the

trial of any person for an alleged violation of this code when the evidence is based upon or obtained from or by the maintenance or use of a speed trap."

Sections 40804 and 40805 provide additional remedies when the charge against a defendant involves the speed of a vehicle. In such instances, the arresting officer is incompetent as a witness if the officer's "testimony is based upon or obtained from or by the maintenance or use of a speed trap" (§ 40804, subd. (a)) or if the officer "was not wearing a distinctive uniform, or was using a motor vehicle not painted the distinctive color specified by the commissioner" (§ 40804, subd. (b)). In addition, a court lacks jurisdiction to convict a defendant of a charge involving the speed of a vehicle if the court admits evidence secured in violation of the speed trap laws. (§ 40805.)

Sections 40803, subdivision (b), 40804, and 40805, which apply only when a defendant is charged with an offense involving the speed of a vehicle, do not apply in this case. (Compare *People* v. *Peet* (1930) 108 Cal.App. Supp. 775 [288 P. 44].) At issue here is section 40803, subdivision (a), which excludes evidence of speed obtained via speed trap in *any* prosecution under the Vehicle Code.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The arresting officer, Santa Clara County Deputy Sheriff Merlin Newton, testified at a municipal court pretrial hearing that, on January 26, 1989, he was "monitoring traffic" on a stretch of Quito Road where the prima facie speed limit was 25 miles per hour. (See § 22352, subd. (b).) He was on duty in a patrol car equipped with radar. Defendant promptly objected to the introduction of Newton's testimony as derived from a speed trap.

Following defendant's objection, the prosecutor proceeded as follows. She asked Newton whether his attention was attracted by defendant's vehicle. Newton said he heard and saw a vehicle approaching; he "visually estimated" the speed of the vehicle to be in excess of 40 miles per hour. The record elsewhere discloses that Newton used the radar, which read the vehicle's speed to be 42 miles per hour. Newton pursued and stopped the vehicle, which was driven by defendant. As he approached defendant, Newton observed signs of alcohol intoxication. After administering a field sobriety test, Newton arrested defendant.

In arguing for suppression, defendant pointed out that the People had the burden of showing probable cause for Newton's stop of defendant's vehicle. (See *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447 [561 P.2d 1135].) Defendant contended the evidence that might otherwise provide probable cause—that is, the radar reading or Newton's independent obser-

vations—was inadmissible because, in the language of section 40803, subdivision (a), the evidence was "based upon or obtained from or by the maintenance or use of a speed trap." Defendant also argued that any evidence of his guilt of the charged offense was inadmissible as the fruit of the unlawful stop. (See *United States v. Cortez* (1981) 449 U.S. 411, 417-418 [66 L.Ed.2d 621, 628-629, 101 S.Ct. 690]; *Dunaway v. New York* (1979) 442 U.S. 200, 216-218 [60 L.Ed.2d 824, 838-840, 99 S.Ct. 2248]; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784, 791, fn. 12 [195 Cal.Rptr. 671, 670 P.2d 325].)

The prosecutor contended the speed trap laws were inapplicable to this case because the People had not charged defendant with a speed-related offense but needed only to establish probable cause for the stop of defendant's vehicle. As a result, the prosecutor made no effort to show that Newton was not maintaining a speed trap.

Although the municipal court determined, at least implicitly, that the speed trap laws applied and that the facts established the use or maintenance of a speed trap, the court substantially denied defendant's motion to suppress. While it excluded the radar reading of the vehicle's speed, the court ruled admissible the officer's sensory perception of defendant's speed, reasoning that such evidence, unlike the radar readout, was not obtained from the officer's use or maintenance of the speed trap.

Defendant appealed to the superior court appellate department (see Pen. Code, § 1538.5, subd. (m)), which reversed in a two-one decision. The majority held that the speed trap laws precluded admission of the evidence and that the speed trap laws could not be circumvented by admission of the arresting officer's observations of speed independent of the radar evidence. The majority rejected the People's argument that the evidence was rendered admissible by the Proposition 8 "Right to Truth-in-Evidence" provision contained in article I, section 28, subdivision (d), of the California Constitution (hereafter section 28(d)). The majority concluded that legislative reenactment of section 40802, extending the local streets and roads sunset provision, overrode application of section 28(d) to the Vehicle Code remedial provision.

Upon the People's application, the superior court certified that transfer of the case to this court appeared necessary to secure uniformity of decision or to settle important questions of law. We ordered the case transferred. (Code Civ. Proc., § 911; Cal. Rules of Court, rules 62, 63.)

DISCUSSION

Putting aside for the moment the issue regarding application of section 28(d), we cannot accept the People's view that the speed trap laws do not

otherwise apply in this case. Section 40803, subdivision (a), excludes evidence "based upon or obtained from or by the maintenance or use of a speed trap." We believe this all-embracing language pertains not only to a radar reading obtained through maintenance of a speed trap but also to the independent observations of the officer operating the speed trap. And, although section 40803, subdivision (a), speaks only of "trial," we read the word broadly to include pretrial proceedings as well, based on section 40801, which speaks of "arrest or prosecution." Thus, we conclude that this case is within the ambit of the speed trap laws. We turn to the question whether section 28(d) abrogates the exclusionary rule contained in section 40803, subdivision (a).

Section 28(d), adopted June 8, 1982, reads in relevant part: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile court for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782, or 1103. . . ."

In *People* v. *Harris* (1989) 47 Cal.3d 1047 [255 Cal.Rptr. 352, 767 P.2d 619], the Supreme Court considered whether certain Evidence Code provisions limiting the admission of evidence to support or attack a witness's credibility had been abrogated by section 28(d). Defendant Harris insisted that, in passing section 28(d), the electorate did not intend a wholesale repeal of those provisions of the Evidence Code governing the admission of evidence. Rather, according to Harris, the electorate wished to conform the state's search and seizure law to the federal exclusionary rule applicable to evidence seized in contravention of the Fourth Amendment.

The Supreme Court rejected this argument, concluding that "[t]he intent of the electorate that both judicially created and statutory rules restricting admission of relevant evidence in criminal cases be repealed except insofar as section 28(d) expressly preserves them is manifest. Had the intent been limited to rules governing the admissibility of evidence seized as a result of an unlawful search or seizure, there would have been no necessity to except expressly 'any statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782, or 1103.' The grant of authority to the Legislature to enact new exclusionary rules, but only by a two-thirds vote of each house, would be meaningless. Constitutional provisions, like statutes, must be read in conformity with their plain language (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744]), and in such a manner as to give effect wherever possible to every word. (*Steinberg* v. *Amplica, Inc.*

(1986) 42 Cal.3d 1198, 1205 [233 Cal.Rptr. 249, 729 P.2d 683].) The presumption against implied repeal (see *In re Thierry S.* (1977) 19 Cal.3d 727, 744 [139 Cal.Rptr. 708, 566 P.2d 610]), on which defendant relies, has no application when the language is clear and does not permit a contrary understanding." (*People v. Harris, supra,* 47 Cal.3d at pp. 1081-1082.)

The Supreme Court went on to note that "[t]he restrictive reading of section 28(d) suggested by defendant [Harris] was also rejected by this court in *In re Lance W., supra,* 37 Cal.3d 873, 888: 'The inclusion in section 28(d) of specified exceptions to its mandate that "relevant evidence shall not be excluded"—i.e., later enacted statutes passed by two-thirds of the Legislature; statutory rules relating to privilege or hearsay; and sections 352, 782, and 1103 of the Evidence Code—affords further evidence of the intent to restrict exceptions to that command. "Under the familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." [Citation.]' " (*People v. Harris, supra,* 47 Cal.3d at p. 1082; see also *People v. Taylor* (1986) 180 Cal.App.3d 622, 631-632 [225 Cal.Rptr. 733].)

We can find no principled way to avoid the plain effect of section 28(d) upon the remedial provision at issue here. Section 40803, subdivision (a), purports to exclude evidence of the speed of a vehicle derived from a speed trap in all prosecutions under the Vehicle Code—despite the fact that such evidence may be relevant and otherwise admissible (Evid. Code, § 210). Although the speed trap statutes may have once been "firmly rooted in California law," (*People v. Halopoff, supra,* 60 Cal.App.3d Supp. 1, 5), the explicit language of section 28(d) necessitates the conclusion that the constitutional amendment abrogated section 40803, subdivision (a).

Defendant offers several theories in an effort to avoid the application of section 28(d). We find none persuasive.

Citing a strong public policy against speed traps, defendant insists that the speed trap remedial provisions are not simply rules of evidence and, therefore, are not within the reach of section 28(d). We cannot agree. While section 40801, setting forth the general prohibition against speed traps, may be viewed as a substantive rule of law, section 40803, subdivision (a), can only be characterized as a rule of evidence. The Legislature could have selected other remedies or penalties for violation of section 40801, but it clearly opted for the exclusion of evidence. We cannot conceive of a stronger indication of public policy than section 28(d), in which the electorate unequivocally stated that "relevant evidence shall not be excluded in any

criminal proceeding . . . ." The mandate applies to all exclusionary provisions, whether found in the Evidence Code or elsewhere.

But defendant argues that even if section 28(d) abrogated section 40803, subdivision (a), section 28(d) was itself overridden four years later by the legislative amendment of section 40802. Defendant relies upon the introductory clause in section 28(d): "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature . . . ." He maintains that the amendment of section 40802 implicitly reestablished the remedial statute at issue here.

Again, we cannot agree. Section 28(d) simply does not lend itself to the interpretation advanced by defendant.

In *In re Lance W.*, the Supreme Court rejected the argument that the Legislature's postsection 28(d) amendment of Penal Code section 1538.5 sufficed to reestablish violation of article I, section 13, of the California Constitution as a basis for the exclusion of evidence. Among other things, the court cited the complete absence of any legislative history indicating such an intent on the part of the Legislature. The court reasoned: "The only mention of [Penal Code] section 1538.5 in its summary of that measure by the Senate Judiciary Committee was a reference to the amendment as a noncontroversial 'clean up' amendment [fn. omitted]. We cannot assume that the Legislature understood or intended that such far-reaching consequences —virtually a legislative repeal of the 'Truth-in-Evidence' section of Proposition 8—would follow an amendment so casually proposed and adopted without opposition." (*In re Lance W.* (1985) 37 Cal.3d 873, 894 [210 Cal.Rptr. 631, 694 P.2d 744].)

In this case, we also find a complete lack of any legislative history indicating an intent to override section 28(d), as well as a legislative amendment unanimously adopted in a rather casual manner. But the present case is even one step removed from *In re Lance W.* The speed trap remedial provisions were not themselves amended or reenacted. And the amendment to section 40802 neither provided for the exclusion of evidence nor referred to the remedial provisions in the speed trap laws. It merely extended the sunset date for the local streets and roads exemption from the application of section 40802. In order to find reestablishment in this case, we would have to conclude that the amendment of section 40802 constituted an implicit reenactment of section 40803. Just as the Supreme Court in *In re Lance W.* declined to view the Legislature's postsection 28(d) reenactment of Penal Code section 1538.5 as a reestablishment of state constitutional grounds for exclusion under section 1538.5, we also do not infer that the 1986 amend-

ment of section 40802 implicitly reestablished other statutory provisions neither discussed nor considered by the Legislature.

Finally, defendant appears to argue that the Fourth Amendment serves as a separate basis for suppression of the radar reading and of Newton's independent observation of excessive speed. Thus, even in the absence of the speed trap remedial provision, defendant contends that admission of the evidence to establish probable cause for Newton's stop of defendant's vehicle would violate the Fourth Amendment. To the contrary, the prohibition against speed traps is strictly statutory. Defendant has cited no case holding that speed traps violate Fourth Amendment rights. Moreover, it is beyond contravention that excessive speed, whether detected through mechanical device or observation, provides probable cause for a stop.

Of course, we note that our decision need not constitute the last word on this subject. Should the Legislature deem it appropriate, it may, with the requisite majority and with a clear manifestation of its intent, reenact the longstanding remedial provisions of the speed trap laws and thereby override the mandate of section 28(d).

## Disposition

The order of the municipal court denying defendant's motion to suppress evidence is affirmed. The case is remanded for further proceedings, including trial, in a manner consistent with this opinion.

Capaccioli, J., and Bamattre-Manoukian, J., concurred.