*Supp. 3 Opinion
CHOATE, P. J.
We hold the “speed trap laws” and those rules governing the admissibility of a vehicle’s speed ascertained by radar are not applicable in those cases where a violation of Vehicle Code section 22350 occurs in a marked and posted school zone. (Veh. Code, § 22352, subd. (b)(2).)
Facts
At 8:05 a.m. on Friday, September 10, 1993, Newport Beach Motor Officer J. Joyce had taken a position on Irvine Avenue near an open public school. It was the beginning of the school year and children were on their way to classes. The posted speed was a maximum of 25 miles per hour when children were present. (Veh. Code, § 22352, subd. (b)(2).)[1] Defendant William Dennett Goodrich attracted the attention of Officer Joyce, who thereafter used his hand-held radar unit to ascertain the defendant’s speed to have been 42 miles per hour. The defendant was tried and convicted of violating Vehicle Code Section 22350.[2]
Discussion
A “speed trap” is a particular section of roadway with a prima facie speed limit set by the Vehicle Code or by local ordinance which is not justified by an engineering and traffic survey conducted within the past five years and where enforcement involves the use of radar. (Veh. Code, § 40802, subd. (b).)) In any case where radar is used in the ascertainment of speed of a vehicle, the officer is incompetent to testify to speed unless there has been produced a current traffic and engineering survey. (Veh. Code, § 40804, subd. (a).)[3]
Officer Joyce, apparently no newcomer to radar cases, came prepared at trial with a current certified engineering and traffic survey for the stretch of *Supp. 4 Irvine Avenue on which the school was located. The “speed limit,” justified by a traffic survey in the context of a “radar ticket,” is fixed at the speed of 85 percent of the motorists using that specific portion of the highway in question after certain adjustments. (People v. Goulet (1992) 13 Cal.App.4th Supp. 1, 9-11 [17 Cal.Rptr.2d 801].)[4] The traffic survey in the instant case revealed that the so-called 85th percentile was 38 miles per hour, which means the adjusted lowest allowable posted speed would be 35 miles per hour, not 25 miles per hour as posted.
The defendant contends that this inconsistent survey result means (1) the survey did not justify the posted speed limit and did not demonstrate the nonexistence of a speed trap, and (2) the officer was incompetent as a witness and cannot express his opinion because his testimony is based on or obtained from the maintenance or use of a speed trap (Veh. Code, §§ 40801, 40802, subd. (b), 40803, subd. (b) & 40804).[5]
In most cases, the defendant would be correct. He is not correct in this case.
We hold that the rules and procedures governing speed traps and the use of radar are inapplicable to those cases where the state Legislature has mandated a maximum speed of a vehicle—in this case, 25 miles per hour at a school when children are present. (Veh. Code, § 22352, subd. (b)(2).)
The Legislature encourages local authorities to set speed limits on “their” local streets and highways and to do so in accordance with the motoring patterns from the 85th percentile of drivers (Veh. Code, § 627; CalTrans Traffic Manual § 8-03.3). The Legislature has repeatedly shown its ongoing disapproval of speed traps. (People v. Sullivan (1991) 234 Cal.App.3d 56 [285 Cal.Rptr. 553]; Veh. Code, § 40808.)
*Supp. 5 But where, as in this case the Legislature has intervened and set the 25-mile-per-hour school-zone speed limit, the local authorities are prohibited from raising the limit even if a higher speed would be equally safe and/or justified by a traffic and engineering survey. (Veh. Code, § 22347.) Also, there can be no “artificially low” posted speeds when the Legislature has fixed the maximum at 25 miles per hour.
To prohibit the use of radar in school zones due to the practical inapplicability of an engineering and traffic survey is clearly not the intent of the Legislature. The safety of children is paramount. To enforce traffic speeds by radar detection in such circumstances, free from the proscription of Vehicle Code section 40801 et seq., is proper and lawful.
Disposition
The judgment is affirmed.
Goldstein, J., and Moore, J., concurred.

Vehicle Code section 22352, subdivision (b)(2) provides for a 25-mile-per-hour speed limit: “[w]hen passing a school building or the grounds thereof, contiguous to a highway and posted with a standard ‘SCHOOL’ warning sign, while children are going to or leaving the school either during school hours or during the noon recess period. The prima facie limit shall also apply when passing any school grounds which are not separated from the highway by a fence, gate or other physical barrier while the grounds are in use by children and the highway is posted with a standard ‘SCHOOL’ warning sign.”

“No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.”

“In any prosecution under this code upon a charge involving the speed of a vehicle, any officer or other person shall be incompetent as a witness if the testimony is based upon or obtained from or by the maintenance or use of a speed trap.”

As noted in section 8-03.3.B.1 of the California Department of Transportation (CalTrans) Traffic Manual, speed limits should be set at or near the 85 percentile speed, the speed “at or below which 85 percent of the traffic is moving” because: “Speed limits higher than the 85 percentile are not generally considered reasonable and safe and limits below the 85 percentile do not facilitate the orderly movement of traffic. Speed limits established on this basis conform to the consensus of those who drive highways as to what speed is reasonable and safe, and are not dependent on the judgment of one or a few individuals.
“The basic speed law states that no person shall drive at a speed greater than is reasonable or prudent. The majority of drivers comply with this law, and disregard regulations which they consider unreasonable. It is only the top fringe of drivers that are inclined to be reckless and unreliable, or who have faulty judgment and must be controlled by enforcement. Speed limits set at or slightly below the 85 percentile speed provide law enforcement officers with a means of controlling the drivers who will not conform to what the majority considers reasonable and prudent.”

See footnote 3, ante.