[No. H012927. Sixth Dist. May 30, 1995.]

MANUEL E. VILLALOBOS, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Martin Milas, Assistant Attorney General, Robert Buell and Gregory J. Rolen, Deputy Attorneys General, for Defendant and Appellant.

Patrick E. Tondreau for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—The superior court rendered a judgment granting a petition for writ of mandate directing the Department of Motor Vehicles (hereafter, DMV) to set aside an order revoking Manuel E. Villalobos's driving privileges following Villalobos's arrest for driving under the influence of alcohol. It reasoned that *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753 [280 Cal.Rptr. 745, 809 P.2d 404], compelled issuance of the writ because the undisputed facts showed that the arresting officer did not see volitional movement of Villalobos's vehicle. On appeal, DMV contends that *Mercer* does not apply because Villalobos was lawfully arrested for drunk driving notwithstanding that the officer did not see volitional movement. We agree and therefore reverse the judgment.

### SCOPE OF REVIEW

■ Ordinarily, we would examine the superior court's findings after its independent review of the administrative record to determine whether the findings were supported by substantial evidence. (*Machado v. Department of Motor Vehicles* (1992) 10 Cal.App.4th 1687, 1692 [13 Cal.Rptr.2d 457].) But the determinative question in this case is one of law, i.e., application of *Mercer* to undisputed facts. On questions of law arising in mandate proceedings, we exercise independent judgment. (*McIntosh v. Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].)

### BACKGROUND

Three citizens saw a vehicle stopped in the number two lane of southbound Interstate 280 at 2:34 a.m. Villalobos was asleep behind the wheel of

the car with his foot on the brake, the engine running, and the gear in drive. The citizens contacted the California Highway Patrol who then dispatched Officer R. E. Del Rosario to investigate. Officer Del Rosario determined that Villalobos had bloodshot eyes, an odor of alcohol, an unsteady gait, and slurred speech. Villalobos also failed a field sobriety test. Officer Del Rosario therefore arrested Villalobos for drunk driving. He thereafter administered a breath test which showed Villalobos's blood-alcohol level to be .16 percent by weight. His report indicated that he did not observe Villalobos driving.

## DISCUSSION

"It is a criminal offense to drive while under the influence of alcohol or a drug, or to drive with 0.08 percent or more, by weight, of alcohol in the blood. [Citations.] In addition to criminal sanctions, the Legislature has established administrative procedures whereby the DMV may suspend a person's driver's license for driving under the influence or with a specified blood-alcohol level. [¶] The DMV has long been authorized to suspend drivers' licenses of persons *convicted* of specified alcohol related driving offenses, or of persons who refused to submit to a chemical test to determine their blood-alcohol level. [Citation.] At issue here is legislation enacted in 1989, operative July 1, 1990, designed to allow suspension of drivers' licenses *before* conviction for driving with a blood-alcohol level of 0.10 percent or more, later reduced to 0.08 percent. [Citation.] 'Similar laws providing for administrative license suspension or revocation, sometimes called "administrative per se" laws, have been enacted and are in effect in at least 23 states, and are reported to be an effective deterrent to driving while under the influence of alcohol or drugs. [Citation.]' [Citations.]

". . . . . . . . . . . . . . . . . . . . . . . .

■ " '[T]he Legislature, in enacting these statutes, contemplated two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and that these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions.' [Citation.] However, as relevant here, one important requirement is common to both. For the incriminating evidence to be admissible in the criminal proceeding, or for the DMV to suspend the driver's license, the underlying arrest must have been lawful." (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 846-847 [25 Cal.Rptr.2d 500, 863 P.2d 745], fn. omitted.)

In *Mercer*, neighbors called the police, and an officer responded to find Mercer slumped over the steering wheel of his car. The vehicle was legally

parked against the curb of a residential street with its lights on and engine running. The officer disturbed Mercer, and Mercer started pulling gears on the transmission as if to drive. Eventually Mercer ceased this activity and rolled down the window. The officer detected an odor of alcohol and ordered Mercer out of the car. He observed that Mercer had slurred speech and bloodshot eyes. He then arrested Mercer for drunk driving and advised Mercer of the obligation to submit to a chemical test for blood-alcohol level. Mercer refused to take a test and protested that he was not driving.

The DMV suspended Mercer's license. The superior court then granted a writ of mandate reasoning that Mercer's arrest was unlawful in that it was warrantless and for a misdemeanor committed out of the officer's presence. The Court of Appeal, however, reversed the judgment reasoning that Mercer exercised such a degree of control over the vehicle that he was driving in the officer's presence within the meaning of the drunk driving statute.

The Supreme Court granted review to resolve conflicting interpretations of the implied consent law and the related license revocation statutes. (*Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d at p. 756.) Several courts had held that observed volitional movement of a vehicle was required before a person's driver's license could be suspended or revoked for refusal to submit to a chemical test. Others had held that observed movement was not required. (*Ibid.*) The Supreme Court concluded that the approach requiring observed volitional movement correctly interpreted the statutes. (*Ibid.*)

The Supreme Court emphasized that it was not holding that observed movement of a vehicle was necessary to support a conviction for drunk driving or was a condition of compelled chemical testing. It stressed: "We address today only the narrow question of whether, under [Vehicle Code] sections 23157 [driver's implied consent to chemical testing following 'lawful arrest' for drunk driving] and 13353 [suspension or revocation of driving privilege for refusal to submit to chemical testing following lawful arrest for drunk driving] *as presently written,* the state may suspend or revoke a driver's license for failure to submit to chemical testing in the absence of evidence of observed volitional movement of a vehicle." (*Mercer* v. *Department of Motor Vehicles, supra,* 53 Cal.3d at p. 757.)[1]

In its analysis, the Supreme Court first noted the narrow focus of the implied consent law: the law allows license suspension or revocation only

[1]We note again that we are not confronted with the implied consent law and the related license suspension and revocation statute. Villalobos submitted to a chemical test and thus was not subjected to suspension because of a refusal to submit. Villalobos's driver's license was suspended under the 1989 license suspension statute which permits preconviction license suspension for "driving a motor vehicle when the person had 0.08 percent or more, by weight, of alcohol in his or her blood." (Veh. Code, § 13353.2, subd. (a)(1).) But the threshold

after a lawful arrest for drunk driving; Penal Code section 836, subdivision 1, permits a warrantless arrest for a misdemeanor such as drunk driving only when the officer has reasonable cause to believe that the person to be arrested committed the offense in his presence; and, operation of the implied consent law and the substantive offense of drunk driving is conditioned on the act of driving rather than mere operating. (*Mercer v. Department of Motor Vehicles, supra*, 53 Cal.3d at pp. 760-761.) The court then turned to what it called "the essential question posed in this case, namely, whether an officer may make a 'lawful arrest' for 'drunk driving' . . . if the arrestee's vehicle is *lawfully parked* and the officer has not observed the vehicle move." (*Id.* at p. 761, italics added.) It concluded: "Because Penal Code section 836, [former] subdivision 1, provides that a warrantless misdemeanor arrest is permissible only if a public offense occurs in the arresting officer's 'presence,' and because the officer in this case did not see Mercer's vehicle move, we conclude Mercer was not 'lawfully arrested' for [drunk driving] and thus cannot be subjected to the license revocation provisions . . . as presently written." (*Id.* at p. 769, fn. omitted.)

*Mercer* therefore turns on the arrest, not the lack of "presence." The officer in *Mercer* did not see volitional movement of the lawfully parked vehicle so he could not lawfully arrest for the misdemeanor of drunk driving. Stated another way, in a case like *Mercer* the requirement of observed volitional movement is necessary to establish the administrative element of lawful arrest.

*Mercer* pointed out that there was an exception to the "presence" requirement of warrantless misdemeanor arrests that did not apply to the case: "Our Legislature has enacted an exception to the common law rule of Penal Code section 836, subdivision 1, for 'drunk driving' arrests made at or near an accident scene, or when a vehicle is found protruding into the street, but neither exception applies when, as here, a vehicle is lawfully parked." (*Mercer v. Department of Motor Vehicles, supra*, 53 Cal.3d at p. 761, fn. omitted.)

The Supreme Court was referring to Vehicle Code section 40300.5. This section provides: "Notwithstanding any other provision of law, a peace officer may, without a warrant, arrest a person who is (1) involved in a traffic accident or (2) observed by the peace officer in or about a vehicle

---

elements (reasonable cause, driving, arrest) that must be administratively found to trigger suspensions under Vehicle Code sections 13353 and 13353.2 are identical. (Veh. Code, §§ 13353, subd. (d), 13353.2, subd. (d), 13558, subd. (c)(1), (2), 13557, subd. (b)(1), (2).) The *Mercer* analysis is therefore conceptually applicable to suspensions under Vehicle Code section 13353.2.

which is obstructing a roadway, when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug, or under the combined influence of an alcoholic beverage and any drug."

■ Vehicle Code section 40300.5, not *Mercer*, applies to this case. Officer Del Rosario observed Villalobos displaying symptoms of intoxication in a vehicle that was obstructing an interstate highway. He was therefore entitled to arrest Villalobos for drunk driving without a warrant. Since Villalobos's arrest for drunk driving was lawful, the administrative element of lawful arrest was established. Officer Del Rosario's lack of "presence" is of no moment.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter a judgment denying the petition for alternative writ of mandamus. DMV is awarded costs on appeal.

Cottle, P. J., and Elia, J., concurred.

A petition for a rehearing was denied June 12, 1995.