[No. H025867. Sixth Dist. Mar. 22, 2004.]

THE PEOPLE, Plaintiff and Appellant, v.
JEFFREY A. HARDACRE, Defendant and Respondent.

1294

COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Amy Haddix, Deputy Attorneys General, for Plaintiff and Appellant.

Page, Salisbury & Dudley and Arthur Dudley for Defendant and Respondent.

## OPINION

**WUNDERLICH, J.**—On October 27, 2001, defendant Jeffrey Hardacre was stopped by a California Highway Patrol Officer for speeding on Highway 9 in Santa Cruz County. Based on objective signs and failed intoxication tests, defendant was arrested and later charged with driving under the influence and driving with a blood-alcohol level greater than .08 percent in violation of Vehicle Code section 23152, subdivisions (a) and (b).[1] A Santa Cruz County Superior Court Commissioner granted defendant's Penal Code section 1538.5 motion to suppress evidence. The Commissioner held defendant's initial stop for speeding was the result of an illegal speed trap and all evidence obtained thereafter was inadmissible under sections 40803 and 40804. The People appealed to the appellate division of the superior court, which reversed the order. Upon defendant's application, the superior court certified the case for transfer to this court. We determined that transfer of the case appeared necessary to secure uniformity of decision and to settle important questions of law and ordered the matter transferred to our court for hearing and decision pursuant to California Rules of Court, rules 62 and 64(c)(1)(A).

■ We conclude that the speed trap exclusionary rules set forth in sections 40803 and 40804 apply only when a defendant is charged with an offense involving the speed of a vehicle. Therefore, the statutes do not apply to the present case, in which defendant was charged with driving under the influence and driving with a blood-alcohol level of .08 percent. We shall reverse the Commissioner's order granting defendant's motion to suppress evidence.

### FACTUAL BACKGROUND

On October 27, 2001, shortly before midnight, California Highway Patrol Sergeant Frank Koss was on duty on Highway 9, two-tenths of a mile north of Graham Hill Road in the community of Felton, in Santa Cruz County. He

---

[1] Further statutory references are to the Vehicle Code unless otherwise indicated.

was parked on the side of the road facing southbound on Highway 9, when he observed defendant traveling northbound. There were streetlights where he was parked and additional light came from the businesses along Highway 9. He visually estimated defendant's speed at approximately 40 miles per hour. He estimated the speed of the vehicle by its moving headlights as they were coming toward him. He turned on his radar unit and received a reading of 44 miles per hour. Defendant obtained a speed of 50 miles per hour, but then slowed back down upon seeing Sergeant Koss. Sergeant Koss verified that he was getting a good reading on the radar unit. He then made a U-turn and stopped defendant near a local high school.

Koss initially approached the passenger side of the vehicle. He asked for a driver's license, registration and proof of insurance. A strong odor of alcoholic beverage emanated from the vehicle. The passenger, defendant's wife, indicated she and a friend had been drinking and defendant had gone to pick them up. At this point, Sergeant Koss requested that defendant exit the vehicle and meet him back by the side of his patrol car. He observed defendant had red, watery eyes and slightly slurred speech. He conducted "one quick test" for intoxication and called for assistance. A second officer arrived and gave defendant a full set of sobriety tests. Defendant was under the influence, and he was arrested.

Sergeant Koss further testified that his report indicated the speed limit was 25 miles per hour. There was a 25 mile per hour speed limit sign facing southbound traffic where Sergeant Koss had been parked. However, he noted that a current traffic and engineering report for that location indicated the speed limit was 35 miles per hour. As near as he could "guess," the speed limit for northbound traffic was 35 miles per hour. Defendant's speed at 40 or 44 miles per hour exceeded either speed limit.

The People introduced a traffic and engineering report, which was prepared by the Department of Transportation and dated November 14, 1996. The stated purpose of the engineering report was to resurvey Highway 9 in Santa Cruz County from milepost 6.46 to 16.97 "to justify the existing speed limits and to allow the California Highway Patrol to utilize radar enforcement in accordance to Vehicle Code Section 40803." The engineering report noted that the existing speed limit for the area was 35 miles per hour. After conducting the traffic survey, it was concluded that the "speed data [was] consistent with retention of the existing 35 speed limit." Sergeant Koss testified he did not know when the actual survey was conducted, although the report was dated November 14, 1996. Without extenuating circumstances, traffic surveys were good for five years.

The Commissioner made a factual determination that defendant was stopped as a result of a speed trap. The Commissioner explained that

according to the Vehicle Code, a speed trap exists if the prima facie speed limit of the area is not justified by an engineering traffic survey completed within five years of the violation. He made a finding that the speed limit on northbound Highway 9 was, in fact, 25 miles per hour. Hence, the survey, which concluded that the appropriate speed limit was 35 miles per hour, did not justify the posted speed limit. Further, because defendant was stopped as a result of a speed trap, his stop and arrest were illegal, and all evidence obtained as a result of the speed trap had to be suppressed.

### Vehicle Code Section 40803

For purposes of this appeal, the People do not dispute the Commissioner's finding that defendant was stopped under circumstances constituting a speed trap under the Vehicle Code. They contend that the exclusionary rules of the speed trap laws, set forth in sections 40803 and 40804, do not apply in a prosecution for drunk driving. They further contend the stop and arrest did not otherwise violate the Fourth Amendment despite the violation of state law, and the motion to suppress evidence should have been denied. We agree.

The laws prohibiting speed traps and providing remedies for their use were first enacted in California in 1923. The laws were based on the Legislature's conviction that the presence of traffic officers dressed in uniform and in plain sight of travelers on the highways was the most effective means of securing observance of traffic rules and regulations. Commentators also have suggested that the Legislature desired to eliminate clandestine methods of traffic enforcement designed to augment local revenues through exorbitant fines. The speed trap laws are currently found in sections 40800 through 40808. (*People v. Sullivan* (1991) 234 Cal.App.3d 56, 58 [285 Cal.Rptr. 553].)

Section 40801 sets forth the general prohibition against the use of speed traps as follows: "No peace officer or other person shall use a speed trap in arresting, or participating or assisting in the arrest of, any person for any alleged violation of this code nor shall any speed trap be used in securingevidence as to the speed of any vehicle for the purpose of an arrest or prosecution under this code." Pertinent to this appeal, section 40802, subdivision (a)(2), defines a speed trap as a section of highway with a prima facie speed limit that is not justified by an engineering and traffic survey conducted within five years prior to the date of the alleged violation and enforcement of the speed limit involves the use of radar.

■ To remedy the use of an illegal speed trap, the Vehicle Code mandates the exclusion of evidence and testimony obtained as a result of the maintenance or use of a speed trap in any prosecution upon a charge involving the speed of a vehicle. Specifically, section 40803 provides: "(a) No

evidence as to the speed of a vehicle upon a highway shall be admitted in any court upon the trial of any person in any prosecution under this code upon a charge involving the speed of a vehicle when the evidence is based upon or obtained from or by the maintenance or use of a speed trap." Similarly, section 40804 provides: "(a) In any prosecution under this code upon a charge involving the speed of a vehicle, any officer or other person shall be incompetent as a witness if the testimony is based upon or obtained from or by the maintenance or use of a speed trap." Section 40805, which specifies that a court lacks jurisdiction to enter a conviction in a prosecution in which speed trap evidence has been admitted, is similarly restricted in application to violations of the Vehicle Code involving the speed of a vehicle.

Defendant contends that despite the express language in the remedial provisions of sections 40803 and 40804, this court should interpret the speed trap exclusionary statutes as applicable in a prosecution charging driving under the influence. He argues that section 40801, the general prohibition against use of speed traps, still applies to any alleged violation of the Vehicle Code, and is not limited to charges only involving the speed of a vehicle. He also argues that the phrase "a charge involving the speed of a vehicle" must be read broadly to include any act of reckless driving, including driving under the influence, where the speed of the vehicle plays a material part in the charges. Applying the following standards of statutory interpretation, we reject this contention.

"In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity in the statutory language, its plain meaning controls; we presume the Legislature meant what it said. [Citation.] 'However, if the statutory language permits more than one reasonable interpretation, courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' [Citations.]" (*People v. Garcia* (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648].)

Although section 40801 generally prohibits the use of speed traps for arresting any person for any alleged violation of the Vehicle Code, all of the exclusionary provisions of the speed trap laws apply only in a prosecution upon a charge involving the speed of a vehicle. (§§ 40803, subd. (a), 40804, subd. (a), 40805.) Thus, the Legislature has expressed its intent, in clear and unequivocal language, that evidence obtained from an illegal speed trap is only inadmissible in cases involving speeding violations. Under the plain language of these statutes, defendant's charges of driving under the influence

and driving with a blood-alcohol level greater than .08 percent were not subject to the exclusionary provisions of the speed trap laws. (*People v. Sullivan, supra,* 234 Cal.App.3d at p. 60; see also *People v. Goulet* (1992) 13 Cal.App.4th Supp. 1, 14 [17 Cal.Rptr.2d 801].)

A review of the legislative history of a 1992 amendment to section 40803 and this court's opinion in *People v. Sullivan, supra,* 234 Cal.App.3d 56, further refutes defendant's argument. In *Sullivan,* Thomas Sullivan was charged with driving under the influence of alcohol (§ 23152). He moved to suppress evidence of his intoxication obtained after a police officer stopped his car for speeding. He contended the evidence of speeding was derived from an illegal speed trap and was inadmissible under the exclusionary rules of the speed trap laws to establish probable cause for the stop. At that time, former section 40803, subdivision (a), provided: "No evidence as to the speed of a vehicle upon a highway shall be admitted in any court upon the trial of *any person for an alleged violation of this code* when the evidence is based upon or obtained from or by the maintenance or use of a speed trap." (Italics added; see Stats. 1991, ch. 459, § 3, p. 2259.) We concluded that since this provision excluded evidence of speed obtained via a speed trap in *any* prosecution under the Vehicle Code, it was applicable to the prosecution for driving under the influence. (*People v. Sullivan, supra,* 234 Cal.App.3d at pp. 59–60.) We further held, however, that sections 40803, subdivision (b), 40804, and 40805, which expressly were restricted to charges involving the speed of a vehicle, did not apply in the case. (*Sullivan,* at p. 60.) We finally held that section 40803, subdivision (a), rendering evidence derived from a speed trap inadmissible, had been abrogated by the Proposition 8 "Right to Truth-in-Evidence" provision contained in article I, section 28, subdivision (d), of the California Constitution. (*People v. Sullivan, supra,* 234 Cal.App.3d at pp. 57–58, 63.)

In 1992, the Legislature responded to the *Sullivan* opinion by adding section 40808 to the speed trap laws, thereby confirming that subdivision (d) of section 28, of Article I of the California Constitution "shall not be construed as abrogating the evidentiary provisions of this article." (§ 40808; Stats. 1992, ch. 538, §§ 1, 2, pp. 2038–2039.) Significantly, in the same bill, Assembly Bill No. 3659 (1991–1992 Reg. Sess.), the Legislature amended section 40803, subdivision (a), replacing the broad language excluding evidence in a prosecution for any violation of the Vehicle Code, with language specifically restricting the exclusionary provision to those prosecutions upon a charge involving the speed of a vehicle. Thus, the Legislature preserved that portion of the *Sullivan* opinion, holding that exclusionary rules applicable in prosecutions for charges involving the speed of a vehicle do not apply to prosecutions for driving under the influence.

The legislative history for Assembly Bill No. 3659 clarifies the Legislature's intent to exempt prosecutions for drunk driving from the exclusionary rules. A bill analysis for the Assembly Committee on Transportation stated: "The bill would restore exclusions of speed trap evidence, but only for prosecutions of speeding violations. This is permitted by Proposition 8. The proponents indicate that they have no interest in excluding speed trap evidence used to prosecute other Vehicle Code violations, such as drunk driving." (Assem. Com. on Transportation, Rep. on Assem. Bill No. 3659 (1991–1992 Reg. Sess.) June 3, 1992, p. 2.) Another summary confirms: "AB 3659 will exclude only speed-related evidence. It will not exclude evidence of alcohol or drug use or any other vehicle code offense. The bill is not intended to change the result in the *Sullivan* case or to protect people who drive under the influence." (Original underscore.)

The legislative history of section 40803 overwhelmingly demonstrates that the Legislature intended the exclusionary provisions of the speed trap laws to apply only in cases involving speeding violations. Thus, the exclusionary provisions of sections 40803 and 40804 were not intended to apply to charges of driving under the influence or driving with a blood-alcohol level of .08 percent although the defendant's speed in a speed trap is used to initiate a traffic stop. We, therefore, reject defendant's contention that general language in section 40801 requires exclusion of speed trap evidence in all cases under the Vehicle Code.

We also reject defendant's proposed interpretation of section 40803 that a charge involving the speed of a vehicle necessarily includes a charge of driving under the influence wherein the driver was initially stopped for speeding. Defendant relies upon *People v. Peet* (1930) 108 Cal.App. Supp. 775 [108 Cal.App. 775, 288 P. 44] to support his argument. In *Peet*, the appellant was charged with reckless driving, based in part on testimony by an officer that appellant was speeding. Interpreting former section 155, the *Peet* court held that a charge of reckless driving, which was dependent upon the speed at which the car was driven for its proof of recklessness, was a charge " 'involving the speed of a vehicle.' " (*People v. Peet, supra,* 108 Cal.App. Supp. at p. 777; see Stats. 1929, ch. 253, § 70, p. 548.) *Peet* is clearly distinguishable. Unlike the appellant in *Peet*, defendant is charged with driving under the influence and with a blood-alcohol level greater than .08 percent, rather than reckless driving. Furthermore, *Peet* interpreted a 1929 version of the speed trap laws, whereas the question before us is whether the Legislature intended the current speed trap laws to apply to a prosecution for drunk driving. As discussed above, the legislative history prepared in conjunction with the 1992 amendments to section 40803 directly refutes the interpretation suggested by defendant.

### THE INITIAL STOP DID NOT VIOLATE THE FOURTH AMENDMENT

Defendant argues nevertheless that the Commissioner correctly granted the motion to suppress evidence because the initial car stop was constitutionally unlawful. Defendant contends that the People failed to introduce any "competent and adequate evidence" supporting a reasonable suspicion that defendant had violated any provision of the Vehicle Code. He argues that the 25 mile per hour posted speed limit was not supported by a current traffic and engineering survey, which rendered the limit invalid, and there was no further evidence that defendant was driving faster than was reasonably safe for the road conditions at the time. We disagree.

■  A law enforcement officer may legally stop a motorist if the facts and circumstances known to the officer support a reasonable suspicion that the driver has violated the Vehicle Code or some other law. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 439 [82 L.Ed.2d 317, 104 S.Ct. 3138]; *People v. Miranda* (1993) 17 Cal.App.4th 917, 926 [21 Cal.Rptr.2d 785].) Sergeant Koss observed defendant driving in an area that had a posted speed limit sign of 25 miles per hour. He visually estimated defendant's speed at 40 miles per hour, and his radar unit indicated defendant's car reached speeds of between 44 and 50 miles per hour. Defendant's excessive speed provided reasonable cause for the traffic stop under the Fourth Amendment. The fact that the commissioner subsequently made a finding that the speed for northbound traffic was 25 miles per hour, that this speed was not supported by the then current traffic and engineering report on Highway 9, and that this portion of the highway constituted a speed trap prohibited by state law cannot be applied retroactively to strip Sergeant Koss of the reasonable suspicion that defendant had committed a traffic violation.

The United States Supreme Court in *Michigan v. DeFillippo* (1979) 443 U.S. 31 [61 L.Ed.2d 343, 99 S.Ct. 2627] held an arrest and search based on a violation of a city ordinance was valid under the Fourth Amendment, even though the ordinance that formed the basis for the arrest was later found unconstitutional. In *DeFillippo*, an officer detained DeFillippo on the street under circumstances indicating he might have been engaged in criminal activity. DeFillippo refused to identify himself. He was then arrested for violating a city ordinance making it unlawful for any person so detained to refuse to identify himself and produce evidence of his identity. A subsequent search of DeFillippo's person uncovered narcotics. A state court of appeal later held the ordinance was unconstitutionally vague. The Supreme Court determined that the arrest and search were, nevertheless, valid. "On this record there was abundant probable cause to satisfy the constitutional prerequisite for an arrest. At that time, of course, there was no controlling precedent that this ordinance was or was not constitutional, and hence the conduct

observed violated a presumptively valid ordinance. A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional." (*Michigan v. DeFillippo, supra,* 443 U.S. at pp. 37–38.)

■ Similarly, in the case before us, the record contains ample evidence that the facts and circumstances known to Sergeant Koss at the time of the detention supported a reasonable suspicion that defendant may have violated the posted speed limit. Further, Koss could not have anticipated that the Commissioner would later determine the stop was illegal under the state speed trap laws because the posted speed limit was not supported by a current traffic and engineering survey. The violation of a state statute, standing alone, does not form the basis for suppression under the Fourth Amendment. (*People v. McKay* (2002) 27 Cal.4th 601, 605 [117 Cal.Rptr.2d 236, 41 P.3d 59].) Defendant has cited no case law or authority which persuades us that a violation of this state's speed trap laws under the facts of this case also constituted a violation of his Fourth Amendment rights.

### DISPOSITION

A charge of driving under the influence and with a blood-alcohol level greater than .08 percent is not a charge involving the speed of a vehicle. Therefore, the speed trap exclusionary provisions of sections 40803 and 40804, which apply only to charges involving the speed of a vehicle, were inapplicable to this case. The Commissioner's order granting defendant's motion to suppress evidence is reversed.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 16, 2004.