[No. C054971. Third Dist. May 22, 2008.]

PAUL DYER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

COUNSEL

Edmund G. Brown, Jr., Attorney General, Jacob A. Appelsmith, Assistant Attorney General, Vincent J. Scally, Jr., and Barbara A. Morris, Deputy Attorneys General, for Defendant and Appellant.

Barry W. Jones for Plaintiff and Respondent.

OPINION

**BUTZ, J.**—Following his arrest for driving under the influence of alcohol (DUI), the Department of Motor Vehicles (DMV) suspended plaintiff Paul Dyer's driver's license under the "administrative per se" statutes. (See Veh.

Code, §§ 13353.2, 13353.3, 13382.) After an administrative hearing, the DMV upheld the suspension.

Dyer then filed a petition for writ of administrative mandate in superior court. (Veh. Code, § 13559, subd. (a);[1] Code Civ. Proc., § 1094.5.) Citing Vehicle Code section 40800, the court granted the petition on the sole ground that the arrest was unlawful because the officer who pulled Dyer over on suspicion of DUI was driving an unmarked patrol vehicle.

■ On this appeal by the DMV, we shall reverse the judgment of the trial court. There was no evidentiary basis to support a finding that Vehicle Code section 40800 was violated and even if there was, the fact that the detaining officer was driving an unmarked vehicle did not render the subsequent arrest unlawful. We also reject Dyer's argument that the arrest was invalid because another officer, who placed him under arrest, did not personally observe him driving under the influence. (Pen. Code, § 836.)

Because the trial court relied on a legally infirm ground for granting the petition and failed to conduct an independent review of the sufficiency of the evidence to support the DMV's factual findings, we shall vacate and remand for a new hearing.

### FACTUAL BACKGROUND[2]

Just after midnight on February 9, 2006, Sergeant Jess Phariss, who was on uniformed duty in an unmarked Placer County Sheriff's Department vehicle, was traveling southbound on State Highway 267. The weather was clear and road conditions were good.

Sergeant Phariss spotted a Jeep Cherokee that was traveling southbound at 35 miles per hour in a 55-mile-per-hour zone. The Jeep sped up to 60 miles per hour as Phariss caught up to it, then slowed to 40 miles per hour. Subsequently, Phariss saw the Jeep cross over both the solid double yellow and/or the broken single yellow center line at least 10 times. On three of those occasions, the Jeep crossed completely into the northbound lane of traffic and then abruptly returned to the southbound lane.

At 12:24 a.m., Sergeant Phariss requested that Deputy Robert Griggs proceed towards the location of the Jeep. Phariss activated his emergency lights and initiated a traffic stop of the Jeep. Griggs arrived to assist as

---

[1] Undesignated statutory references are to the Vehicle Code in effect at the time of the February 2006 incident.

[2] Our factual summary is taken from the administrative record in this case.

Sergeant Phariss approached the driver, later identified as Dyer, and asked him why he appeared unable to keep his vehicle within his lane of traffic. Dyer answered, "Uh . . . I didn't know I was in the other lane." Phariss then asked if there was anything mechanically wrong with the Jeep, to which Dyer answered negatively. During the encounter, Sergeant Phariss noticed objective symptoms of intoxication, including a moderate odor of alcohol on Dyer's breath, confusion, unsteady balance, slow, slurred speech, and red eyes.

Sergeant Phariss directed Dyer to step out of the Jeep and go to the rear of the vehicle where Deputy Griggs was standing. Dyer stumbled out of the Jeep and Griggs administered a series of field sobriety tests, which Dyer performed very poorly. Griggs then tried to obtain a breath sample. Dyer put his lips to the mouthpiece several times but did not breathe into it. Finally, he gave a "quick 'puff' " of air into the mouthpiece, which registered an "inconclusive" 0.072 percent blood-alcohol content (BAC). Based on Dyer's poor performance on the sobriety tests and the observations of Phariss and Griggs, Griggs placed Dyer under arrest for DUI.

During an inventory search of the Jeep, Sergeant Phariss found an opened, partially consumed bottle of vodka under the driver's front seat, a glass pipe associated with smoking marijuana, and a film canister containing marijuana.

Dyer was transported to the county jail for booking, where Deputy Griggs administered two Intoxilyzer breath tests at 1:07 a.m., some 30 minutes after the arrest. The two breath samples each registered 0.11 percent BAC.

## PROCEDURAL HISTORY

Based on the investigation reports of Deputy Griggs and Sergeant Phariss and the results of the Intoxilyzer test, the DMV suspended Dyer's driver's license under section 13353.2. Dyer requested an administrative hearing. After an evidentiary hearing, the appointed DMV hearing officer found that the requirements of section 13353.2 had been met, and she upheld the suspension.

Dyer then filed a petition for writ of mandate in superior court. (See § 13559, subd. (a).) Although the court's initial ruling was to deny the writ, it ultimately reversed itself upon receipt of supplemental briefing. The trial judge determined that because Sergeant Phariss was driving an unmarked patrol car and not wearing a uniform in violation of section 40800, Dyer was not "lawfully arrested" and therefore the license suspension was improper. The DMV appeals from the judgment granting the writ of mandate.

## DISCUSSION

### I. General Principles

■ "It is a criminal offense to drive while under the influence of alcohol or a drug, or to drive with 0.08 percent or more, by weight, of alcohol in the blood. [Citations.] In addition to criminal sanctions, the Legislature has established administrative procedures whereby the DMV may suspend a person's driver's license for driving under the influence or with a specified blood-alcohol level. [¶] The DMV has long been authorized to suspend drivers' licenses of persons *convicted* of specified alcohol related driving offenses, or of persons who refused to submit to a chemical test to determine their blood-alcohol level. [Citations.] At issue here is legislation enacted in 1989, operative July 1, 1990, designed to allow suspension of drivers' licenses *before* conviction for driving with a blood-alcohol level of [0.08 percent]." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 846 [25 Cal.Rptr.2d 500, 863 P.2d 745], fn. omitted (*Gikas*).)

■ Under the administrative per se statutes, "when a person is arrested for driving under the influence and is determined to have a prohibited blood-alcohol level, the arresting officer or the DMV serves the person with a 'notice of the order of suspension.' (§§ 13353.2, subds. (b) & (c), 23158.5, subds. (a) & (b) [now § 13382, subds. (a) & (b)].) The notice informs the person that his or her driver's license will be suspended 45 days from the date of service, states the reason and statutory grounds for the suspension, and explains the person's right to seek an administrative hearing. (§§ 13353.2, subd. (c), 13353.3, subd. (a).)" (*Gikas, supra*, 6 Cal.4th at p. 846.) "The DMV automatically reviews the suspension order to determine, by a preponderance of the evidence, whether: (1) the arresting officer had reasonable cause to believe the person was driving in violation of section 23152 or section 23153; (2) the person was placed under arrest; and (3) the person was driving with 0.08 percent or more, by weight, of alcohol in the blood. (§ 13557.) The determination is based upon the officer's report and any evidence accompanying the report. (§ 13557, subd. (a).) The person may request a hearing with the DMV limited to these issues, at which additional evidence may be presented." (*Gikas*, at pp. 846–847.)

A person whose license suspension is upheld may seek judicial review of an adverse decision by way of petition for writ of administrative mandate. (Veh. Code, § 13559, subd. (a); Code Civ. Proc., § 1094.5.) Review is strictly limited to the record of the administrative hearing; the trial court may not consider any other evidence. (§ 13559, subd. (a).) "The superior court uses its independent judgment to review DMV hearing decisions which suspend driver's licenses. [Citation.] Under this standard of review, the court must

independently weigh the evidence and may make its own findings. [Citation.] It must set aside the administrative decision where the agency's findings are not supported 'by the weight of the evidence.' (Code Civ. Proc., § 1094.5, subd. (c).)" (*Ocheltree v. Gourley* (2002) 102 Cal.App.4th 1013, 1017 [126 Cal.Rptr.2d 77] (*Ocheltree*).)

On appeal, our task ordinarily is limited to ascertaining whether substantial evidence supports the trial court's findings. (*Coombs v. Pierce* (1991) 1 Cal.App.4th 568, 576 [2 Cal.Rptr.2d 249] (*Coombs*).) However, the application of an interpreted statute to undisputed facts is subject to our independent review. (*Hoschler v. Sacramento City Unified School Dist.* (2007) 149 Cal.App.4th 258, 262 [57 Cal.Rptr.3d 115]; see *Villalobos v. Zolin* (1995) 35 Cal.App.4th 556, 558 [41 Cal.Rptr.2d 207].)

## II.   Lawfulness of the Arrest

The trial court's decision to annul the DMV suspension turns exclusively on the lawfulness of Dyer's arrest. The following facts are undisputed: (1) Sergeant Phariss was on uniformed[3] patrol in an unmarked sheriff's department vehicle when he observed Dyer driving erratically, radically changing speeds and crossing over the double yellow line multiple times; (2) Phariss summoned Deputy Griggs to assist him with the contact; (3) Phariss pulled over Dyer's vehicle and observed obvious signs of intoxication; (4) Griggs arrived and administered field sobriety tests, on which Dyer performed very poorly; (5) Griggs placed Dyer under arrest for drunk driving and Phariss recovered an open, partially consumed bottle of vodka under the driver's seat; (6) about 30 minutes after the arrest, Dyer gave two breath samples at the county jail, each of which registered a BAC reading of 0.11 percent.

■   Under the administrative per se statutes, in order for the DMV to validly suspend a person's driver's license, "the underlying arrest must have been lawful." (*Gikas, supra,* 6 Cal.4th at p. 847; see also *Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 760 [280 Cal.Rptr. 745, 809 P.2d 404] (*Mercer*).)

■   "A law enforcement officer may legally stop a motorist if the facts and circumstances known to the officer support a reasonable suspicion that the driver has violated the Vehicle Code or some other law." (*People v. Hardacre* (2004) 116 Cal.App.4th 1292, 1300 [11 Cal.Rptr.3d 214]

---

[3] The trial court's finding that Sergeant Phariss was not wearing a uniform finds no support in the record. Phariss's report states unequivocally, "I was on *uniformed* patrol in an unmarked Placer County Sheriff's Department vehicle." (Italics added.)

(*Hardacre*).) No claim is made that Sergeant Phariss lacked reasonable cause to pull Dyer over on suspicion of DUI. The pivotal question is whether Dyer's arrest was *unlawful* because Sergeant Phariss was driving in an unmarked vehicle when he effectuated the traffic stop.

The parties spend a significant portion of their briefs discussing the question of *who* has the burden of proof with respect to whether Sergeant Phariss complied with section 40800. The parties apparently focused on the final sentence of the trial court's decision, which states: "The record was *devoid of any proof* that would allow the Court to make a finding that the Officer was exempt from the requirements of Vehicle Code [section] 40800." (Italics added.) However, it is unnecessary to resolve the burden of proof dispute because, as we shall show, section 40800 has no relevance to this case.

## A.  *No Evidence That Section 40800 Was Violated*

Former section 40800 provided, in relevant part: "Every *traffic officer on duty for the exclusive or main purpose of enforcing the provisions of Division 10 or 11 of this code* [traffic safety laws] shall wear a full distinctive uniform, and if the officer while so on duty uses a motor vehicle, it must be painted a distinctive color specified by the commissioner."[4] (Stats. 1961, ch. 202, § 2, p. 1212, italics added.)

Section 40800 is included in a chapter of the Vehicle Code dealing with speed traps. Speed trap laws have been on the books in California since 1923. (*Hardacre, supra*, 116 Cal.App.4th at p. 1296; *People v. Sullivan* (1991) 234 Cal.App.3d 56, 58 [285 Cal.Rptr. 553].) In the words of an early California Supreme Court case, speed trap laws reflect a legislative determination that " ' "the presence of traffic officers actually patrolling the highways dressed in distinctive uniforms and in plain sight of all travelers on the highways would have a most salutary effect in securing the observance of each and all of the regulations imposed upon drivers of vehicles upon the public highways." ' " (*Fleming v. Superior Court* (1925) 196 Cal. 344, 349 [238 P. 88].) Commentators have also suggested that the Legislature was "motivated by a desire to eliminate clandestine methods of traffic enforcement designed to augment local revenues through exorbitant fines." (*Sullivan, supra*, 234 Cal.App.3d at p. 58.)

■     Regardless of its purpose, section 40800, by its plain language, applies only to "*traffic officer[s]*" whose "*exclusive or main purpose*" is to enforce

---

[4] Section 40800 was subdivided and rewritten in 2007, after the proceedings in this case. The amendments did not affect the substance of the statute at issue here. (See Stats. 2007, ch. 682, § 18.)

traffic laws on the public highways. In his report, Sergeant Phariss states only that he was on "uniformed patrol in an unmarked Placer County Sheriff's Department vehicle." There is no evidence in the administrative record that Phariss was a "traffic officer" or that his main duties consisted of traffic enforcement. On the contrary, Phariss appeared to be exercising supervisory duties on the night in question: Rather than make the arrest himself, he requested that Deputy Griggs, "the deputy assigned to the King's Beach area," assist him at the scene; and it was Griggs who conducted the sobriety tests and placed Dyer under formal arrest.

The trial court was not permitted to grant the writ based on speculation or assumptions about the nature and scope of Sergeant Phariss's duties. Without any evidence in the record that Phariss was a traffic officer whose exclusive or primary duty consisted of traffic enforcement, a necessary predicate for the applicability of section 40800 was lacking.

### B.    A Section 40800 Violation Does Not Render a Subsequent Arrest Unlawful

Even assuming that Sergeant Phariss qualified as a "traffic officer" and that his traveling in an unmarked vehicle failed to comply with the directive of section 40800, the violation would not have invalidated Dyer's arrest.

Normally, the issue of what consequence to attach to a violation of a statute would depend on whether we interpreted the enactment as "directory" or "mandatory." (See, e.g., *Cox v. California Highway Patrol* (1997) 51 Cal.App.4th 1580, 1586–1587 [60 Cal.Rptr.2d 159].) That inquiry is unnecessary here, however, because the Legislature has clearly spelled out what sanctions should follow from a violation of section 40800.

Former section 40804 provided, in relevant part, "(a) In any prosecution under this code *upon a charge involving the speed of a vehicle*, any officer or other person shall be incompetent as a witness if the testimony is based upon or obtained from or by the maintenance or use of a speed trap. [¶] (b) Every officer arresting, or participating or assisting in the arrest of, a person *so charged* while on duty for the exclusive or main purpose of enforcing the provisions of Divisions 10 and 11 is *incompetent as a witness* if at the time of such arrest he was not wearing a distinctive uniform, or was using a motor vehicle not painted the distinctive color specified by the commissioner."[5] (Stats. 1978, ch. 84, § 1, p. 219, italics added.)

Likewise, section 40805 of the speed trap law provides: "Every court shall be without jurisdiction to render a judgment of conviction against any person

---

[5] Section 40804 was rewritten in 2007, after the proceedings in this case. The amendments did not affect the substance of the statute discussed here. (See Stats. 2007, ch. 682, § 19.)

for a violation of this code *involving the speed of a vehicle* if the court admits any evidence or testimony secured in violation of, or which is inadmissible under this article." (Italics added.)

■ The import of these sections is unmistakable. In any prosecution of a person charged with an offense *"involving the speed of a vehicle,"* the testimony of the arresting officer is *inadmissible* unless that officer was in uniform and driving a marked patrol car. The Legislature has thus created a specific and limited remedy for a violation of section 40800—the exclusion of the noncomplying officer's testimony in a prosecution *for speed-related* offenses. These sanctions further the chief goal of speed trap legislation, i.e., to restrict clandestine enforcement of the *speed laws* by officers not clearly identified as law enforcement personnel.

■ The offense of driving under the influence does not "involv[e] the speed of a vehicle" as defined in section 40805. (See *Hardacre, supra,* 116 Cal.App.4th at p. 1299.) Thus, where the driver is detained or arrested on a charge of DUI, the exclusionary provisions of sections 40804 and 40805 are inapplicable. (*Hardacre,* at p. 1299.)

The case of *People v. Tuck* (1977) 75 Cal.App.3d 639 [142 Cal.Rptr. 362] (*Tuck*) illustrates this point. There, Tuck was a passenger in a car pulled over for speeding by two plainclothes officers traveling in an unmarked vehicle. The officers found contraband in the vehicle and Tuck was later convicted of its possession. On appeal, Tuck claimed the trial court should have granted his motion to suppress the evidence on the ground that the officers' violation of section 40800 rendered the vehicle stop illegal. (*Tuck,* at pp. 642–643.)

■ The appellate court disagreed. It first pointed out, as we just did, that the statute only applies to *traffic officers* whose main duties were traffic enforcement. Secondly, section 40800 does not prohibit an officer in an unmarked patrol car from detaining a vehicle where he has reasonable cause to believe the driver has committed a traffic offense; rather, it simply renders inadmissible the officer's testimony in a prosecution for a *speed-related violation.* (*Tuck, supra,* 75 Cal.App.3d at pp. 643–644.) Since Tuck was not prosecuted for a speed offense, the conviction was affirmed. (*Ibid.*)

■ *Tuck*'s analysis applies here. Since the Legislature has authorized no sanction for section 40800 violations other than as set forth in sections 40804 and 40805, the trial court erred in fashioning its own remedy by declaring the arrest unlawful.[6] (See *People ex rel. Van de Kamp v. American Art Enterprises,*

---

[6] We are unable to discern the basis for Dyer's and the trial court's fixation on *Mercer, supra,* 53 Cal.3d 753. *Mercer* held merely that the Vehicle Code and Penal Code statutes *as then written* rendered unlawful the arrest of a person for drunk driving unless the arresting officer

*Inc.* (1983) 33 Cal.3d 328, 333 [188 Cal.Rptr. 740, 656 P.2d 1170].) "[I]t is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts 'may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' " (*People v. Massicot* (2002) 97 Cal.App.4th 920, 925 [118 Cal.Rptr.2d 705].)

## C. *Penal Code Section 836*

Relying on Penal Code section 836, Dyer claims that his arrest by Deputy Griggs was unlawful because only Sergeant Phariss, not Griggs, observed the conduct that formed the basis for the arrest, i.e., drunk driving.

Penal Code section 836 provides that a peace officer may make an arrest without a warrant whenever he has "probable cause to believe that the person to be arrested has committed a public offense *in the officer's presence.*" (Pen. Code, § 836, subd. (a)(1), italics added.) Dyer claims the judgment should be affirmed on the alternative ground that the arresting officer, Deputy Griggs, did not personally observe him committing a misdemeanor DUI.

The argument lacks merit.[7] The California Supreme Court case of *Freeman v. Dept. Motor Vehicles* (1969) 70 Cal.2d 235 [74 Cal.Rptr. 259, 449 P.2d 195] (*Freeman*) is on point and dispositive. In *Freeman*, Deputy Sheriff Fowler observed Freeman driving in an apparent state of intoxication and stopped his vehicle. He then summoned the assistance of Highway Patrol Officer Byrd, who made the arrest. When the defendant refused to submit to a chemical sobriety test, his license was suspended by the DMV. (*Id.* at pp. 235–236.)

Freeman challenged the license suspension on the ground that his arrest was unlawful because Officer Byrd did not see him commit the misdemeanor of drunk driving. The state Supreme Court framed the question as follows: "*If*

---

actually saw the volitional movement of the vehicle—regardless of whether the driver could be convicted in a criminal court of drunk driving. (*Mercer*, at pp. 757–758, 768–769.) Our analysis, like that in *Mercer*, rests solely on statutory construction. Because the sanctions for a section 40800 violation are expressly set forth in the Vehicle Code, there is no need to resort to criminal case law regarding suppression of evidence.

[7] Although the trial court never reached this contention because it granted the writ on a different ground, we will resolve it, since it raises a pure question of law under an undisputed set of facts.

*a peace officer 'stops' a motor vehicle driver for an alleged misdemeanor traffic offense committed in his presence, may a valid arrest be made by another peace officer who was summoned by the first peace officer but did not see the driver commit the alleged offense?"* (*Freeman, supra*, 70 Cal.2d at pp. 236–237.)

The court answered this question affirmatively, stating in part: "Officer Byrd was not the sole arresting officer. *Deputy Sheriff Fowler, by 'stopping' plaintiff for the alleged offense and detaining him pending arrival of an officer of the highway patrol, initiated, and thereby participated in, the arrest.* (See Pen. Code, §§ 834, 835.) Deputy Sheriff Fowler did not himself complete the arrest, but it was completed by a person he had summoned to aid him in making the arrest, as he was entitled to do under section 839 of the Penal Code. That section reads: 'Any person making an arrest may orally summon as many persons as he deems necessary to aid him therein.' " (*Freeman, supra*, 70 Cal.2d at p. 237, fn. omitted, italics added.) Inasmuch as Deputy Sheriff Fowler personally observed the conduct and related his observations to Highway Patrol Officer Byrd, who assisted Fowler by making the arrest, the court held that the requirements of Penal Code section 836 were satisfied. (*Freeman*, at pp. 237–238.)

The actions of Sergeant Phariss and Deputy Griggs were precisely analogous to those of Deputy Sheriff Fowler and Highway Patrol Officer Byrd in *Freeman*. After observing Dyer's erratic driving, Phariss summoned Griggs to assist him with the traffic stop. Although it was Griggs who formally placed Dyer under arrest, both officers participated actively therein.

█ Where one officer has reasonable suspicion, based on personal observation, that a suspect may be driving while intoxicated, he may summon another officer to assist him in making the arrest. (Pen. Code, § 839.) Because both officers participated in arresting Dyer for DUI, his arrest complied with Penal Code section 836. (See also *Johanson v. Department of Motor Vehicles* (1995) 36 Cal.App.4th 1209, 1216–1217 [43 Cal.Rptr.2d 42] [where parking attendant could have made a citizen's arrest for DUI, licensee's subsequent arrest by an officer he summoned did not violate Pen. Code, § 836].)

We reject Dyer's argument that the later enactment of Vehicle Code section 40300.5 rendered *Freeman* obsolete as authority. That section merely provides *exceptions* to the requirement that misdemeanor drunk driving must occur in the arresting officer's presence.[8] It does not vitiate *Freeman*'s

---

[8] Vehicle Code section 40300.5 provides that a peace officer may, notwithstanding the "presence" requirement of Penal Code section 836, make a warrantless drunk driving arrest under certain exigent circumstances. Because we uphold the arrest on other grounds, we find it unnecessary to determine whether the instant arrest fell within any of these exceptions.

conclusion that Penal Code section 836 is not violated when the officer who observes drunk driving behavior summons another to assist him in making the arrest.

### III. Whether Dyer Was Driving with a BAC of 0.08 Percent or Above

As a final ground for affirmance, Dyer contends there was no substantial evidence that he drove with a BAC level of at least 0.08 percent. Acknowledging that the trial court made no finding on this issue, on appeal Dyer relies on the doctrine that a judgment will be affirmed if correct on any ground, regardless of the reasons the trial court advanced to support its ruling.

The record shows that Dyer performed extremely poorly on the field sobriety tests. Only after several attempts did he muster enough breath to record a reading on the mouthpiece of the PAS (preliminary alcohol screening) device, which was an "inconclusive" 0.072 percent BAC. Two Intoxilyzer tests administered 30 minutes after his arrest registered a BAC reading of 0.11 percent, well over the legal limit.

The administrative hearing officer found, based on the evidence, that Dyer drove with a BAC of at least 0.08 percent. On a petition for administrative mandate, the trial court was required to exercise its independent judgment to determine whether this finding was supported " 'by the weight of the evidence.' " (*Ocheltree, supra*, 102 Cal.App.4th at p. 1017.) The appellate court reviews the trial court's determination under the substantial evidence test. (*Coombs, supra*, 1 Cal.App.4th at p. 576.)

Owing to its erroneous legal conclusion that the arrest of Dyer was unlawful, the trial court failed to decide whether the weight of the evidence supported the administrative hearing officer's finding that Dyer drove with a BAC in excess of the legal limit. Because the trial court failed to perform this essential function, it is impossible to review its determination for substantial evidence and the matter must be remanded for a new hearing. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 659–660 [53 Cal.Rptr.2d 4].) "A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85 [87 Cal.Rptr.2d 754].) Where the trial court decides the case by employing an incorrect legal analysis, reversal is required regardless of whether substantial evidence supports the judgment. (See *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with the views stated herein. The DMV shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Raye, Acting P. J., and Morrison, J., concurred.